Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States in this honorable court. Thank you. Good afternoon. We have one case on our docket this afternoon is 19-30029 Butler versus Porter. Mr Baki. Good afternoon and may it please the court. I'm sorry, I called the wrong person, Mr Rios. Uh, I'm Mr Baki, your honor. Okay, I got it. All right. Thank you. My name is Wes Baki with SMU's First Amendment Clinic, and I, along with my colleague Evan Rios, represent the appellant Max Ray Butler. The primary claims in this case arise under the First and Eighth Amendments. My colleague, Mr Rios, will present argument on Mr Butler's First Amendment claim, and I will be discussing why the district court erred in dismissing Mr Mimic claims. We would like to reserve four minutes for rebuttal on the Eighth Amendment claims. There are two reasons why this court should remand this matter to the district court. First, Mr Butler plausibly pled a number of Eighth Amendment claims in his complaint. Second, even if the claims is pled were implausible, a district court may not dismiss a prisoner's complaint with prejudice and without leave to amend surprises the prisoner of the deficiencies in the pleading and then grants them the opportunity to cure. Mr Butler's complaint raised two plausible Eighth Amendment claims. First, he alleged that prison staff inflicted unnecessary and wanton pain on inmates by forcing them to use cold showers. And second, he alleged that prison staff were deliberately indifferent to his medical needs. The cold showers claim is presented most clearly in Mr Butler's second supplement to his complaint at R. A. 107 and again restated in his fifth supplement at R. A. 1 56. There, Mr Butler goes into detail on how officers inflicted quote unquote personal corporal punishment on inmates by forcing them into the cold showers. Despite the availability of regular showers, the deliberate indifference claims are presented most clearly in the initial complaint at pages 32 39 and 40. Where did he reference the Eighth Amendment? Your Honor, he did not reference the Eighth Amendment in his initial complaint, but the form complaint provided to him by the Bureau of Prisons specifically instructed him not to cite legal authority. And to the extent that anyone reading Mr Butler's complaint could not have reasonably understood him to be alleging Eighth Amendment claims. And we think that he did. There's also the separate and independent error of the district court and denying his motion for leave to amend this. It seemed like there was a lot of back and forth with the magistrate judge giving him opportunities and he kept filing stuff. So it's not like he filed one complaint and they dismissed it and didn't let him amend. It was kind of a back and forth for a while, right? And so how many times do they have to do the back and forth? Your Honor, Mr Butler filed a number of supplements to his initial complaint and the magistrate correctly construed those as part of the initial complaint itself. The one and only time in this case that Mr Butler was granted leave to file an amended complaint was for the express limited purpose of identifying which defendants remain on his First Amendment retaliation claim. So while Mr Butler did file a number of supplements to his complaint, he could have filed 100 supplements and it wouldn't have gotten him any closer to curing whatever undisclosed problems the magistrate judge saw in his Eighth Amendment claims when it dismissed them sua sponte. But the problem is if the magistrate just doesn't know he's making an Eighth Amendment claim, then they cannot point out what the problem is. I mean, you know, it's kind of a chicken and egg sort of thing, right? Your Honor, we think that it's clear that he did make out an Eighth Amendment claim on the cold showers. For example, a number of sister circuits have recognized that similar factual allegations relating to cold showers do in fact give rise to a cognizable Eighth Amendment violation. And the deliberate indifference claims that he alleged in his complaint, um, were also clear. He had reported all of these conditions to prison staff. They were treatment causing him hard. The facts are there. But where? When did he use the? When did he first say I'm making this claim under the Eighth Amendment? Your Honor, after the after the district court dismissed his non retaliation claims, Mr Butler found a number of documents asserting that he thought he intended that he thought he stated Eighth Amendment claims that he intended to state Eighth Amendment claims and that he was ready to file an amended complaint. Um, that is presented most clearly at our away 409 and his request for leave to amend his complaint. He also filed a second request for leave to amend his complaint at our away 4 38, where he again talks about how he intended to state Eighth Amendment claims. Uh, these these motions were improperly denied by the lower courts. However, Your Honor, on the ground that Mr Butler had been afforded, quote, to amend his complaint already, but that was simply incorrect. The one and only time that Mr Butler was granted leave to file unamended complaint in this case was to identify which defendants remain on his First Amendment retaliation claim. Despite having raised these Eighth Amendment claims in his complaint, the district court's first and only acknowledgement of them was to state that they had already been dismissed in a prior order. That prior order purported to dismiss all of Mr Butler's claims with prejudice apart from his First Amendment claim. But nowhere in that order did the magistrate judge or district court devote even a single word to analyzing Mr Butler's Eighth Amendment claims. Since the question I know, and you can defer this to Mr Rios if you need to. I know you all didn't supplementally brief this point, but it is a question before us, which is the appointment of counsel issue. Do you have any argument that he did preserve that since he didn't appeal it to the district judge? Your Honor, as far as the motion for appointment of counsel is concerned, we're relying for that argument on what Mr Butler briefed in his initial briefing to this court. However, we would argue that there were exceptional circumstances in this case and that the district court did, in fact, air in refusing to appoint counsel for him. The magistrate judge did not didn't appoint counsel. But where did he appeal that to the district judge or contest that to the district judge? And if you don't know, it's all right. I just wanted to see if you had anything to add on that, because the government has argued that he waived that. So I'm just asking about that. Your Honor, I don't have that record side in front of me, so we would defer to what's stated in the initial briefs on that point. Okay. On the eighth amendment claims, we're asking this court to remand this matter to the district court to reinstate the eighth amendment claims and, as necessary, to apprise Mr Butler with notice of the deficiencies in the claims and to provide him one opportunity to file an amended complaint on remand. If permitted to file an amended complaint, Mr Butler could allege more specific facts regarding the eighth amendment violations. We cite a number of examples of what he could plead on remand at footnote six of our supplemental opening brief. And again, while he was never apprised of the need to to provide these additional details on remand, he may well be able to craft a complaint that overcomes whatever undisclosed deficiencies the magistrate judge saw in his eighth amendment claims. To conclude, we respectfully ask this court to vacate the district court's dismissal order and to remand with instructions to apprise Mr Butler of any deficiencies in his eighth amendment claims and to give him the chance to file an amended pleading. Thank you, and I'll turn it over to Mr Rios to present the first amendment claim. Your Honor, and may it please the court. My name is Evan Rios, and I, too, am with the SMU Law First Amendment Clinic, representing Mr Butler in this matter. I'll be addressing the second issue before this court, whether the Bivens doctrine should extend to Mr Butler's First Amendment retaliation claims. It should, and as a result, the court should reverse the district court's erroneous dismissal of Mr Butler's Bivens action. Because of unique procedural and factual circumstances, this case presents the court with the opportunity to recognize a Bivens remedy in a new context without opening the floodgates to all First Amendment Bivens claims. Specifically, as was alleged at the district court and taken as true for purposes of this appeal, Mr Butler was subjected to a years-long retaliation campaign for exercising his right to file grievances against BOP officers. Declining to recognize a remedy for the plaintiff here may create a ripple effect where prisoners are discouraged from invoking the grievance processes afforded them. And further, this may signal to federal jailers that it's open season to retaliate against prisoners who file grievances against them, knowing that without Bivens, the only remedy is itself to file more  This is a vicious cycle of retaliation. In light of this, extending the... Why isn't this something Congress should address rather than us? We are simply judges who apply the law. Why should we be creating law on this? Your Honor, I recognize the concern about separation of powers, and I recognize the concern potentially about over-deterrence. But to quote Professor Steve Vladek, the fact that Congress could address this is hardly proof that only Congress can address this. And part of the argument that the district court relied on in addressing the special factors here, Your Honor, is that the Prison Litigation Reform Act, the PLRA, itself counsels hesitation against extending Bivens in this instance due to when it incorrectly relied on the PLRA's failure to create a standalone damages remedy as proof that no remedy exists at all here. And there are two reasons for that. First, Congress did not have a need to create such a remedy given that the Supreme Court has recognized, especially in Carlson as it applies here, that there is a remedy that can be inferred directly from the Constitution. It's axiomatic that Congress legislates against the backdrop of existing law. And so the PLRA was passed some 25 years after the Supreme Court recognized the Bivens remedy, and 16 years after Carlson was decided. So Congress's failure to create a standalone remedy here is hardly remarkable, knowing, again, that this cause of action inferred by the Supreme Court based on the Constitution was there already. To agree to this, if we were to rule in Mr. Butler's favor, that would be an expansion of Bivens. It would not be just following Bivens or Carlson. Certainly, Your Honor. And as we've conceded on page 50 of our supplemental briefing, this is a new Bivens context. Okay, so then it gets back to, I mean, if we just said, well, we don't ever have to just defer to Congress, so we could just be creating laws right and left. And that seems completely inconsistent with separation of powers and the limited jurisdiction of federal courts in general. Certainly, Your Honor. And recognizing that that's a concern that's been discussed at length in most recent Bivens cases. Again, Congress could act, but the fact that they could is not proof that only Congress could act. I believe that the judicial branch, as a co-equal branch of government, has the opportunity to act as a check on rogue executive officers, which I believe Justice Kennedy referred to in the Abbasi opinion as the core purpose of the Bivens doctrine. And beyond the PLRA, there are two quick special factors I'd like to get to that the district court discussed. The first was the increased cost of recognizing a new Bivens remedy here. And while it's true that recognizing any new Bivens remedy will, at the margins, increase litigation costs, if this itself were enough to counsel hesitation in expanding Bivens to a new context, there would be no point to have the special factors analysis. Courts would just see new context and then they would decide that Bivens should not be expanded. But as we know, based on recent jurisprudence, the analysis is always two steps. And finally, just to address the cost issue and the early disposition of the Bivens remedy, qualified immunity creates a powerful protection for BOP officials undertaking a good faith effort to police prisons. This allows courts to dismiss actions on the pleadings and at the summary judgment stage. The last special factor that the district court looked to was the effect that this may have on BOP officials exercising their duties. But recognizing a Bivens remedy here in light of the specific facts that Mr. Butler alleges does not implicate the sort of quick heat-of-the-moment decisions that both the defendants and the district court were concerned about, Mr. Butler was subjected to a years-long retaliation campaign for the exercise of his constitutional rights. And the Bivens remedy itself, again, as Justice Kennedy recognized in Abbasi, that is the core purpose of the doctrine itself. Now pivoting quickly to alternative remedies, we'll rest on our briefing for the majority of the points there, but I just wanted to point out a few quick things. The court in Abbasi stated that the existence of an alternative remedial structure may counsel against the creation of a new Bivens cause of action. But here, it is very likely that there were not alternative remedies available to Mr. Butler. The district court specifically looked at the BOP's administrative relief program, or the ARP, but it's absolutely essential to note that Mr. Butler did attempt to participate in the ARP in pages 44 through 47 of the record, and it was this action itself that caused the retaliation that Mr. Butler is alleging. Federal officers cannot obstruct a prisoner's access to a grievance process or procedure and then invoke the availability of that process itself as proof that no claim of action exists at all. And then one more quick point about the ARP. The ARP is not Congress's design. It's the Bureau of Prison's design. The court in Abbasi noted that the touchstone of the Bivens analysis is statutory intent. That is congressional intent. There has to be some clue that Congress intended for the ARP to serve as the remedy for the violations of Mr. Butler's rights in order for its existence to foreclose the availability of a Bivens remedy at all, and no such clue exists here. The last quick alternative remedy point I'd like to make is that the district court and the government rely on injunctive relief as an alternative remedy, but injunctive relief was not available to Mr. Butler here either. As the record indicates on page 42, Mr. Butler did request injunctive relief after about eight months in the shoe. However, by the time the magistrate judge issued the first R&R in 2017, Mr. Butler had been transferred from Oakdale, rendering as the district, or pardon me, as the magistrate judge noted, rendering his claim for injunctive relief to the district court. As a matter of fact, Mr. Butler did not request injunctive relief at all. As Judge Graves noted in his dissent in the Cantu v. Moody case, extending Bivens is a disfavored judicial remedy, but it still is a judicial remedy in certain circumstances, and we believe that those circumstances are present here. Therefore, we respectfully ask that the district court be reversed. Thank you. Thank you, Mr. Riaz. Mr. Quast? Thank you, Mr. Riaz. I represent the 11 Bureau of Prisons Correctional, Investigative, and Unit Management staff defendants here. The district court correctly declined to create a Bivens cause of action in the First Amendment retaliation claim in the prison housing context. The Supreme Court has never recognized a Bivens remedy in any First Amendment context, and every court of appeals to address the issue of whether or not to create a remedy in the prison for retaliation claim in the prison context, every court of appeals has declined to do so. Now, plaintiff seeks to dispute this overwhelming weight of precedent and authority essentially by asking this court to ignore Bivens jurisprudence in the modern era, both this circuit's jurisprudence and Supreme Court's jurisprudence. So, for example, as recently as last year, this circuit has rejected an argument like plaintiff is now making that the PLRA was in fact a ratification of Bivens claims in the prison context writ large and not in fact a sign that the Congress did not want more Bivens claims. In the United States versus Canada case, the circuit said it is inconsistent with the Supreme Court's later opinions to the effect that legislative inaction is not inadvertent when Congress repeatedly enacts legislation to reform an administrative process, but at no point chose to extend the kind of remedies sought. Congress has never created the remedy that plaintiff seeks here. Congress in fact has acted repeatedly to give deference to the executive branch in housing inmates in deciding how inmates should seek out their claims and what to do if those administrative processes aren't available, which brings me to plaintiff's alternative process points. Plaintiff states, plaintiff's counsel states that injunctive relief wasn't available here and that the administrative process couldn't have been an alternative remedy for him because he was not successful in those processes and because he was being retaliated against for engaging in those processes. I mean, the simple fact of the matter is plaintiff repeatedly throughout the record says that he did engage in those processes. He raised the exact retaliation claims that he now brings through it, that he now is seeking to bring through a Bivens lawsuit and merely the fact that he was unsuccessful does not mean that the process was not available to him. Moreover, it's not even about whether a process is available or will be successful for a given plaintiff in a given case. As the Supreme Court said in the Malesko decision, so long as the plaintiff had an avenue for some foreclosed judicial imposition of a new substantive liability. Contrary to plaintiff's arguments about the administrative remedy process, administrative processes have been acknowledged by this circuit, other circuits, the Ninth Circuit in Vega, this circuit. What about the argument though that that's what caused them to come after him? His complaints is what caused the retaliation. So not only are they not helpful, they're harmful. Yes, Your Honor. Congress anticipated this very issue in the designing the ARP and in making a bypass mechanism. So where a plaintiff like here is saying that the process wasn't available to him, Congress thought through that and said, okay, where it's not available to an individual plaintiff, then they can go immediately to district court and seek conjunctive relief. Congress set up, I mean, you could really view it as one process here. The first step is to proceed, informal remedy, official remedy, appeal within the process. If that whole part of the process isn't available to him, then he can immediately seek relief in federal court. Here, plaintiff sought relief in the wrong federal court, which is why the court said, below here, said they didn't have jurisdiction to release him from the shoe in California. But that doesn't mean that a process wasn't available to him. And indeed, Abbasi, Ziegler v. Abbasi, the conjunctive relief can be a faster and more direct route to relief, thus obviating the need for the court to stick its neck out and create a Bivens cause of action. Like you said, Judge Haynes, making the law, not just enforcing laws that Congress had created. Indeed, it would be going beyond what Congress anticipated in the PLRA in setting up that two-stage process. And even before, it's not just the PLRA, of course. Other congressional action exists here, such as CRIPA before then, which was modified by the PLRA, the First Step Act recently, dealing with prison housing, stripping the courts of authority to review certain prison housing decisions, and generally the decades of legislation before then, giving the Attorney General, Bureau of Prisons, the discretion to house inmates where they see fit. And that makes sense. It made sense for Congress to leave that to the executive branch, to house prisoners where they see fit, because as the courts have recognized, the Supreme Court's recognized in Turnery-Safley, in the Overton decision, prison management, prison decisions should be left to the experts, which are prison officials. Now, that's just generally... So you're saying whether it's executive or legislative, it sure ain't judicial branch. That's absolutely correct. And in terms of the separation of powers, which the legislative action implicate here, it is both that Congress said, executive branch, design this process, and we'll have that process be the initial stage for seeking relief for any conditions within a federal prison. But also, there's less of a need for... On the other hand, there's less of a need for courts to act as well. So it's really both and here, because plaintiff had these alternative remedies, both through the process, injunctive relief, and the other remedies mentioned in our briefing. Plaintiff also discusses qualified immunity as essentially giving license to this court to expand Bivens. The Supreme Court has always separated out the qualified immunity and creation of a cause of action remedies, being merits versus whether a cause of action exists. Now, they remanded to us on that in Hernandez, right? Right, exactly, which is why it's appropriate for the court to address this antecedent question of whether or not to create a cause of action here. And what courts have found that even in light of the qualified immunity defense that federal employees have, these types of retaliation claims, like I said, even with qualified immunity, are not amenable to early decision. I think the Supreme Court in Crawford L. and the Third Circuit in Mack said that these claims are easy to plead and difficult to disprove. So even with that robust defense of qualified immunity, you're still going to have potentially all of these retaliation cases that can be easily pled and won't be resolved until trial, burdening the judiciary, who both has to screen these claims and handle them later on, but also the government who defends the majority of these claims, and the individual defendants themselves, of course, who are subject to potentially personal liability in these cases. So those, I don't think qualified immunity cuts in favor of the plaintiff here, or can be seen as giving license to create a Bivens cause of action. Now, plaintiff says that, you know, increased costs could be a reason to decline to create a Bivens cause of action in any case, and essentially that would, they claim that this would be a justification for always declining to expand Bivens. Bivens is a disfavored remedy, and there are many justifications for why it would not be expanded. But more fundamentally, these types of retaliation claims are not just any case. Unlike the cases, Carlson, Davis, Bivens, where the Supreme Court has affirmatively recognized a Bivens claim in the past, retaliation claims, as I mentioned earlier, have been recognized as the court, as causing uniquely higher costs. They involve more difficult issues of causation, which is exactly the kind of concern the court had in Bush v. Lucas, and said could be a cause to hesitate before expanding a Bivens remedy. They isolated particularly tricky issues of causation. Also, unlike in Carlson, where deliberate indifference would have needed to be pled in order to raise an Eighth Amendment claim, here, any more than de minimis adverse action could form the basis for a retaliation claim. So this could be anything from shoe placement for retaliation, loss of a commissary job, loss of good time. They're just innumerable actions that the Bureau of Prisons could take, that if the person had, if the prisoner had previously filed the grievance, would now be constitutionalized, potentially, as a potential retaliation claims. So that not only makes these easier to plead, but also just opens up the universe of when these cases could be pled. As we noted in our brief, there are many, many prisons, many federal prisoners in the United States. It's just a wide universe of potential cases. Opening the floodgates is absolutely a concern here. What about the Eighth Amendment argument that we should remand and let him plead more fulsomely, the cold shower and the deliberate indifference to medical and so on? As to the plaintiff's Eighth Amendment claims, there were no Eighth Amendment claims in the original complaint. I believe the court mentioned that he stated the facts, but he didn't say Eighth Amendment. We would disagree with that characterization. Not even the facts were there in the 1838. He said there are other negative shoe conditions that although typical of all prisoners' shoes are notable, including that the showers often run cold. This doesn't speak to the kind of individualized misconduct that would raise, that would raise or even speak to an Eighth Amendment harm that the court has said is a necessary predicate for a pittance action. This doesn't speak to wanton infliction of harm. This doesn't, and this certainly doesn't speak to deliberate indifference or any sort of intentionality like that linked with the fact that no individual is named as being responsible. In fact, later on in the case, the plaintiff points out that this was, the cold showers were due to a mechanical failure. Now for that cold shower point in particular, plaintiff points to Record of Appeal 107-156. These are the same document that were, that was filed twice. So there's really only one document. This was not a supplement to the complaint as plaintiff characterizes it. This was a letter to the court asking for injunctive relief to end retaliation. This is, this is the other big problem with now what plaintiff is trying to transform their Eighth, their Fifth and First Amendment claims into Eighth Amendment claims. Essentially excise out from those discussions of here's how my due process was being violated. Here's how I was being retaliated against and take those, take little snippets out of that and say that that is, that forms an Eighth Amendment claim. I think that would be an impossible standard for district courts to follow. The magistrate judge did a thorough decision here analyzing all of these facts that plaintiff raised in the light of just how plaintiff alleged them, which was as consequences, negative consequences of being housed in the special housing unit. So I mean given though that when you have a pro se litigant, you're how do you, you know, how do you explain the lack of liberally construing this, these facts as the Eighth Amendment claim or how, where is that line that's drawn between becoming the lawyer as the magistrate judge becoming the lawyer for the pro se litigant, which you shouldn't be and liberally construing which you should. So if the court were to, the court were to be viewed, if the district court had said there are Eighth Amendment claims here, that wouldn't have been liberally construing plaintiff's complaint, that would have been manufacturing claims for a plaintiff. I think the question- That's crossing that line from liberal construction to becoming the lawyer for. Right, exactly. So for example, plaintiff says again in his, for his eyeglasses claim that he was never provided eye care when he was in the special housing unit and this exacerbated the harm of being held in there. He doesn't say that some individual person violated his rights by declining to do that. Now, this probably doesn't even rise to the level of a serious medical harm, but even if it did, he doesn't allege the kind of intentionality. So none of the kinds of elements are there that would even speak to an Eighth Amendment claim. And to be perfectly clear on this, I'm not just saying that he failed to state an Eighth Amendment claim or that the law wasn't clearly established that these were Eighth Amendment violations. I'm saying there were no Eighth Amendment claims in the complaint whatsoever, whether for cold showers or for being deliberately indifferent to his medical harm. So for example, you know, plaintiff tries to rely on documents like ROA 409 or other later filed documents. These are all documents outside of the complaint. As the court recognized, the district court cut him a lot of leniency. The district court acknowledged six or seven, six supplemental documents after his initial complaint, I believe, all as part of his complaint in a very generous reading of the federal. What about the argument that allowing the supplemental is, does not sort of give the magistrate judge credit for having allowed amended? Right. So the district court or the magistrate judge did allow him to amend it just as to the First Amendment retaliation claim, but there would have been no need to allow him to amend to replete or fix Eighth Amendment claims because they were simply not there. And the district, this magistrate judge at that time had been on the bench for nearly a decade. She sits in a district where there's a federal prison, I believe a federal immigration facility as well. She's well versed with these. There would have been no reason to ignore an Eighth Amendment claim if they were there, but plaintiffs simply pleaded, retaliation claims. At some point, he did use the phrase Eighth Amendment, correct? Correct. Yes, in briefs, not never in a complaint. Well, but that put somebody on notice that he was making an Eighth Amendment claim if some strike. That he would, that he wanted to amend his complaint to add an Eighth Amendment claim. What's your best case that says that was too late? The best case to say that it was too late, off the top of my head, Your Honor, I do not have a, I do not have a case that I can think of, but it is a general proposition that you cannot amend a complaint by in a brief. I think that's a pretty well-known point of law and it was after and even, by the way, even if it hadn't been too late in the sense that the case had already been limited by the screening order, the idea that he could bring in these claims wholly unconnected with the ongoing retaliation that he was alleging and against different, you will note that I do not represent any prison medical staff here. These defendants are not even alleged to have done anything in those claims, would have really been a stretch of joiner issues in addition to being too late and may have had even other problems if he had attempted to add new claims against new defendants years into the litigation. Turning back briefly to the First Amendment claim, Your Honor, which as plaintiffs acknowledge in their oral argument form is the core issue in this complaint, in this case. When the PLRA was passed, Congress knew Carlson existed. So Congress had not ratified First Amendment retaliation claims to that extent, but it's not just the PLRA that we're asking the court to take notice of here when we're asking the court to say that congressional action counsels hesitation. It's all of the other activity that the court had, that Congress had taken in terms of stripping the courts of the ability to and give plaintiffs, prisoner plaintiffs, the opportunity to challenge their prison housing conditions. If Your Honors have no other questions, I would ask that the Court of Appeals affirm the District Court's decision and decline to create a novel Bivens cause of action in the First Amendment retaliation claim. Thank you. Thank you, counsel. Mr. Bakke, you have a vote. A quick few points on rebuttal, Your Honors. First, I wanted to get back to Judge Payne's question about whether Mr. Butler had objected to the denial of his motion to appoint counsel. He did. That motion was denied at ECF 14. Mr. Butler objected at ECF 18, ROA 104, and that objection was directed to the clerk of court rather than to the district judge. And if there's any more questions on this point, Your Honors, we'd be happy to file a 28-J letter to brief that issue. Turning back to the Eighth Amendment claims, opposing counsel suggests that there simply were no Eighth Amendment claims in Mr. Butler's complaint. We think that is obviously not true. He's alleged the cold showers claim. He's alleged the deliberate indifference claims. Opposing counsel also speculates that certain conditions weren't serious enough to make out a deliberate indifference claim. For example, on the eye care. Yet in our briefs, we cite a number of cases where other courts have recognized that similar conditions give rise to a cognizable Eighth Amendment claim. And in any event, I would like to reiterate that to the extent that no one reviewing these claims could have understood Mr. Butler to be bringing Eighth Amendment claims. One thing was unmistakably clear, and that's that Mr. Butler was ready to file an amended complaint. He thought he had stated these claims, yet the district court improperly denied that motion. On the First Amendment Bivens issue, a few points here. The court had some concern about requiring an inquiry of subjective intent into the federal defendants, but that's not a concern in Bivens actions as evidenced by the fact that the Supreme Court in Davis v. Passman recognized the Bivens remedy for a sex discrimination claim, which ostensibly also requires subjective intent. If the court has no further questions, we would like to thank the court for the opportunity to present Mr. Butler's argument and for the rest of our arguments, we rely on our briefs. You're muted, Chief Judge. Mr. Bakke and Mr. Arias, we thank you very much for representing Mr. Butler pro se and for the excellent job you've done in this court in assisting with us in analyzing his claims. Thank you very much. Thank you, Chief Judge Owen. That will conclude the arguments for this afternoon's cases under submission. Thank you.